Kirk A. Pasich (CA SBN 94242)
pasichk@dicksteinshapiro.com
Cameron H. Faber (CA SBN 100643)
faberc@dicksteinshapiro.com
Julia K. Holt (CA SBN 221291)
holtjulia@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
Tel:   (310) 772-8300
Fax:   (310) 772-8301

James R. Murray (admitted *pro hac vice*)
murrayJ@dicksteinshapiro.com
Gina A. Hough (admitted *pro hac vice*)
houghg@dicksteinshapiro.com
Avner E. Mizrahi (admitted *pro hac vice*)
mizrahia@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C.  20006-5403
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDYMAC FEDERAL BANK, F.S.B., by the FEDERAL DEPOSIT INSURANCE CORPORATION as Conservator, <br><br> Plaintiff, <br><br> vs. <br><br> PMI MORTGAGE INSURANCE CO., an Arizona corporation, <br><br> Defendant. | **CASE NO. CV08-4303 WHA** <br><br> Assigned to the Hon. William H. Alsup <br><br> **STIPULATION AND ~~PROPOSED~~ ORDER RE LEAVE FOR INDYMAC TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT** <br><br> Complaint Filed:  Sept. 12, 2008 |

DICKSTEIN
SHAPIRO LLP

1

## **STIPULATION**

2       This Stipulation is entered into by Plaintiff INDYMAC FEDERAL BANK,

3   F.S.B., by the FEDERAL DEPOSIT INSURANCE CORPORATION as Conservator

4   ("IndyMac") and Defendant PMI MORTGAGE INSURANCE CO., an Arizona

5   corporation ("PMI"), by and through their counsel of record.

6       WHEREAS, IndyMac filed its original complaint on September 12, 2008;

7       WHEREAS, IndyMac intends to file a first amended and supplemental

8   complaint, which includes allegations concerning acts occurring between IndyMac

9   and PMI (collectively, the "Parties") after September 12, 2008, a copy of which is

10  attached hereto as Exhibit A;

11      WHEREAS, the Parties desire that all current disputes between them be

12  resolved in this one action;

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DICKSTEIN
SHAPIRO LLP

NOW THEREFORE, the parties hereby stipulate and agree, subject to this Court's approval, that IndyMac be given leave to file its First Amended and Supplemental Complaint and that PMI be given leave to file its response thereto within 20 days thereafter.

SO STIPULATED.

Dated:  October 31, 2008                DICKSTEIN SHAPIRO LLP


By:_____/s/_____
        Kirk A. Pasich
        Attorneys for Plaintiff IndyMac Federal
        Bank, F.S.B., by the Federal Deposit
        Insurance Corporation as Conservator

Dated:  October 31, 2008                HOWARD, RICE, NEMEROVSKI, CANADY, FALK & RABKIN


By:_____/s/_____
        Douglas A. Winthrop
        Attorneys for Defendant PMI Mortgage
        Co., an Arizona corporation

## ATTESTATION

I, Kirk A. Pasich, am the ECF User whose identification and password are being used to file this Stipulation and Proposed Order re Leave For IndyMac to File First Amended and Supplemental Complaint Pursuant to Civil Local Rule 6-2.  I hereby attest that Douglas A. Winthrop has concurred in this filing.

Dated:  October 31, 2008                DICKSTEIN SHAPIRO LLP


By:_____/s/_____
        Kirk A. Pasich
        Attorneys for Plaintiff IndyMac Federal
        Bank, F.S.B., by the Federal Deposit
        Insurance Corporation as Conservator

DICKSTEIN
SHAPIRO LLP

1

## <u>ORDER</u>

2        **IT IS SO ORDERED**.  IndyMac shall have leave to file its First Amended and

3    Supplemental Complaint in the form attached hereto.  PMI will have 20 days to

4    respond to the First Amended and Supplemental Complaint.

5

6        Judge of the United                    Court



7                                                    DOCSLA-35470v02

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATION AND PROPOSED ORDER RE LEAVE FOR INDYMAC TO FILE FIRST AMENDED AND
SUPPLEMENTAL COMPLAINT**

DICKSTEIN
SHAPIRO LLP

# EXHIBIT A

Kirk A. Pasich (SBN 94242)
PasichK@dicksteinshapiro.com
Cameron H. Faber (CA SBN 100643)
FaberC@dicksteinshapiro.com
Julia K. Holt (CA SBN 221291)
HoltJulia@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
Tel:   (310) 772-8300
Fax:   (310) 772-8301

James R. Murray (admitted *pro hac vice*)
MurrayJ@dicksteinshapiro.com
Gina A. Hough (admitted *pro hac vice*)
HoughG@dicksteinshapiro.com
Avner E. Mizrahi (admitted *pro hac vice*)
MizrahiA@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006-5403
Tel:   (202) 420-2200
Fax:   (202) 420-2201

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDYMAC FEDERAL BANK, F.S.B., by the FEDERAL DEPOSIT INSURANCE CORPORATION as Conservator,<br><br>Plaintiff,<br><br>vs.<br><br>PMI MORTGAGE INSURANCE CO., an Arizona corporation,<br><br>Defendant. | CASE NO. CV08-4303 WHA<br><br>Assigned to the Hon. William H. Alsup<br><br>**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY RELIEF; INJUNCTIVE RELIEF; BREACH OF CONTRACT; TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND REFORMATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff INDYMAC FEDERAL BANK, F.S.B., by the FEDERAL DEPOSIT INSURANCE CORPORATION as Conservator, complains of defendant and alleges as follows:

1

## NATURE OF THE ACTION

1.     IndyMac Federal Bank, F.S.B. ("IndyMac"), by the Federal Deposit Insurance Corporation (the "FDIC") as Conservator, seeks a comprehensive declaration of the rights, duties, and liabilities of PMI Mortgage Insurance Co. ("PMI") under the lender-paid mortgage insurance ("LPMI") coverage program that IndyMac's predecessor, IndyMac Bank, F.S.B. ("Old IndyMac"), purchased from PMI to insure the risk of borrower defaults on thousands of mortgage loans that IndyMac originated to its residential borrowers or acquired and sold into the secondary mortgage market.

2.     Pursuant to the parties' established practice and course of dealings, PMI has a limited right to "audit" certain loan files.  However, pursuant to that practice and course of dealings, PMI is entitled to exercise that right only as to files for delinquent loans or loans for which IndyMac has made a claim under the LPMI coverage program, and only on a reasonable basis.  Contrary to that practice and course of dealings, in July 2008, PMI made an unprecedented demand that IndyMac produce more than 5,300 insured loan files within 30 days (all 26 prior requests combined did not exceed 582 loan files, the largest prior request was for 140 loan files, and 19 of the 26 prior requests were for 4 or fewer loan files).  PMI then unreasonably refused to grant IndyMac a reasonable extension to comply with this unprecedented and unreasonable demand, instead abruptly informing IndyMac in August 2008 that it was rescinding the LPMI coverage on 5,565 loans—as to which IndyMac paid PMI more than $13.7 million in premiums to insure.  IndyMac then filed the initial complaint in this lawsuit on September 12, 2008.  Even though IndyMac was not required to deliver all 5,565 loan files under the parties' established practice and course of dealings because most of the files were for loans that are not delinquent or for which IndyMac has not made a claim, IndyMac nonetheless delivered the loan files as quickly as possible to PMI as an act of good faith.  IndyMac has incurred substantial expense in collecting, compiling, and delivering these loan files so quickly.

3.     More than three weeks after IndyMac filed the original complaint in this lawsuit, PMI, in early October 2008, purported to rescind LPMI coverage on approximately 292 additional insured loans under a new rescission theory, asserting—incorrectly—that those loans were ineligible for coverage under the LPMI coverage program.  PMI also asserted that this new rescission theory applied to 1,287 of the 5,565 loans for which PMI previously purported to rescind LPMI coverage in August 2008.  The 292 loans and 1,287 loans (totaling 1,579 loans), however, were eligible for LPMI coverage when Old IndyMac submitted them to PMI.  Moreover, PMI has waived any right it may have had to argue that these 1,579 insured loans were ineligible and is estopped from making that argument because PMI treated those loans as eligible by affirmatively agreeing to provide LPMI coverage on those loans, charging Old IndyMac and/or IndyMac premium on them, accepting the premium, continuing to charge and accept premium each month for more than a year, and later paying out claims for coverage on some of those loans.

4.     Therefore, without any justification in law or fact, PMI, to date, has purported to rescind LPMI coverage on approximately 5,857 loans (5,565 loans under the original erroneous rescission theory—1,287 of which also fall under PMI's new, also incorrect, rescission theory—and an additional 292 loans under that new rescission theory), and has attempted to shift more than $1.57 billion of risk exposure to IndyMac.  IndyMac thus seeks a declaration that PMI's attempt to rescind LPMI coverage on those 5,857 insured loans with a total value of more than $1.57 billion has no legal effect, is null and void, and is unenforceable.

5.     IndyMac also seeks an injunction (a) requiring PMI to withdraw its alleged rescission of LPMI coverage on the 5,857 loans, (b) preventing PMI from demanding loan files for loans that are not delinquent or for which IndyMac has not made a claim, and (c) requiring PMI to allow IndyMac a reasonable period of time to furnish PMI with the loan files that PMI is permitted to review—only files for loans that are delinquent or for which IndyMac has made a claim under the LPMI coverage

1   program.

2        6.      IndyMac also seeks damages from PMI for its unreasonable and

3   unprecedented conduct and its violation of the implied covenant of good faith and fair

4   dealing that it owed, and still owes, IndyMac.  PMI has tortiously breached this

5   covenant, thus acting in bad faith, and has acted contrary to the customs, practices,

6   and standards in the insurance industry.

7        7.      If, for any reason, any language in the policy relied upon by PMI can be

8   reasonably interpreted to mean only what PMI contends in seeking rescission, then

9   that language does not reflect, because of mistake, the mutual understanding and

10  expectation of the parties and should be reformed to do so.

## THE PARTIES

12       8.      The FDIC is a corporation organized under the Federal Deposit Insurance

13  Act, 12 U.S.C. § 1811, *et seq.*, with its principal place of business located in

14  Washington, District of Columbia.

15       9.      IndyMac Bank, F.S.B. ("Old IndyMac") was a federally chartered and

16  FDIC insured savings association.  On July 11, 2008, the Office of Thrift Supervision

17  (the "OTS") closed Old IndyMac and appointed the FDIC as receiver (the "Receiver")

18  pursuant to 12 U.S.C. § 1464(d)(2)(A).

19       10.     Also on July 11, 2008, pursuant to 12 U.S.C. § 1821(d)(2)(F)(i), the OTS

20  granted the Receiver's application to organize IndyMac Federal Bank, F.S.B.

21  ("IndyMac") as a new federal savings association.  The OTS then appointed the FDIC

22  as Conservator.  The Receiver transferred most of Old IndyMac's insured deposits and

23  substantially all of Old IndyMac's assets, including the LPMI coverage program, to

24  IndyMac.  As Conservator, the FDIC succeeds to the rights, titles, powers, and

25  privileges of the insured depository institution by operation of law.  12 U.S.C.

26  § 1821(d)(2)(A).  The Conservator may take action "appropriate to carry on the

27  business of the institution and preserve and conserve the assets and property of the

28  institution."  12 U.S.C. § 1821(d)(2)(D)(ii).

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT AND DEMAND FOR JURY TRIAL

11.    IndyMac is a federally chartered and FDIC insured savings bank with its principal place of business in Pasadena, County of Los Angeles, California.

12.    Upon information and belief, PMI is an Arizona corporation with its principal place of business at 3003 Oak Road, Walnut Creek, California 94597.  PMI is licensed to do business and is doing and transacting business in California.

13.    Throughout this Complaint, the term "Old IndyMac" will be used for the entity (and its actions) that existed before July 11, 2008 (IndyMac Bank, F.S.B.). The term "IndyMac" will be used for the entity (and its actions) that was created on July 11, 2008 (IndyMac Federal Bank, F.S.B.).  The term "IndyMac" also will be used for the Plaintiff in this action—IndyMac by the FDIC as Conservator.

## JURISDICTION AND VENUE

14.    Under 12 U.S.C. § 1819(b)(2)(A), "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."  This Court thus has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

15.    This Court has personal jurisdiction over PMI because PMI contractually agreed to submit to the jurisdiction of this Court.  This Court also has personal jurisdiction over PMI because PMI was authorized to transact, and was transacting, business in the State of California within the time period relevant to the claims stated herein.

16.    Venue is proper in this District because PMI contractually agreed to venue being in this District.  Venue also is proper in this District under 28 U.S.C. § 1391(a)(1) and (c) because PMI resides in this District, as it is a corporation subject to personal jurisdiction in this District.  Venue also is proper in this District under 28 U.S.C. § 1391(a)(2) because a "substantial part of the events or omissions giving rise to the claim occurred" in this District.

1    **OLD INDYMAC'S PURCHASE OF MORTGAGE INSURANCE FROM PMI**

2        17.    IndyMac is a federal savings bank that has a substantial business

3    servicing residential mortgage loans.  Old IndyMac had a substantial business

4    originating, acquiring, selling, and servicing residential mortgage loans.  As a regular

5    part of its business, Old IndyMac securitized large pools of the mortgage loans that it

6    originated to borrowers or acquired from other sellers of mortgage loans, transferring

7    those loans to trusts as collateral for the issuance of bonds (known as certificates or

8    notes) to those who invested in the trusts.  Old IndyMac also sold loans to whole loan

9    investors and the government sponsored enterprises (the "GSEs"), primarily the

10   Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan

11   Mortgage Corporation ("Freddie Mac").  Old IndyMac acted as the servicer for the

12   loans transferred to the trusts, whole loan investors, and GSEs (collectively, the

13   "investors"), and assumed contractual responsibility for a wide range of servicing

14   actions essential to the investors, including the responsibility to maintain mortgage

15   insurance on the loans in the trusts.  Old IndyMac's mortgage loan servicing rights

16   and responsibilities have been transferred to IndyMac.

17       18.    To protect itself and the investors from the risk of borrower defaults on

18   the mortgage loans that it services for others or holds in its portfolio, Old IndyMac

19   purchased mortgage insurance from various insurers, including PMI.  Old IndyMac

20   first purchased lender-paid mortgage insurance ("LPMI") coverage from PMI on loans

21   with loan-to-value ratios up to 100% on or about December 11, 1995.  On February 8,

22   2006, Old IndyMac renewed this coverage, which was provided by a letter agreement,

23   as amended by a letter agreement executed on March 1, 2006, and another letter

24   agreement executed on August 7, 2007(collectively, the "Letter Agreements").  The

25   LPMI coverage program also was provided by the PMI First Lien Master Policy

26   (Form UW 2170.00 (3/94)) (the "Policy"), as amended by the Partner Delivered

27   Quality ("PDQ") Endorsement (Form UW 2170.03 (5/95)).

28       19.    The LPMI coverage program—consisting of the Policy, the PDQ

1   Endorsement, and the Letter Agreements—insured all loans that Old IndyMac

2   delivered to PMI between February 8, 2006 and February 8, 2008.

3   　　　　20.　　Old IndyMac purchased LPMI coverage to insure loans that it originated

4   or acquired as loans without mortgage insurance.  By buying LPMI coverage for these

5   loans before it sold them into the secondary mortgage market, Old IndyMac was able

6   to improve the execution of the sale of these loans to investors.  The PDQ

7   Endorsement provided the mechanism to facilitate the LPMI coverage for these

8   mortgage loans.  After approving a loan, Old IndyMac would deliver a form to PMI

9   (the "PDQ Transmittal Form") describing the terms of the loan, the borrower

10   documents relied on by Old IndyMac in approving the loan, the loan's loan-to-value

11   ratio, the borrower's FICO score (a type of credit score that lenders use to assess an

12   applicant's credit risk), and other factors related to the loan.  Within one business day

13   of receiving from Old IndyMac the PDQ Transmittal Form for a new loan, PMI was

14   required to issue a certificate extending coverage for that loan, unless the loan was

15   ineligible for coverage.  Thus, each loan that Old IndyMac delivered to PMI was

16   insured by the LPMI coverage program, subject to PMI's review and approval of

17   eligibility and Old IndyMac's payment of premium.

18   　　　　21.　　Old IndyMac paid a different premium for each loan, depending on the

19   individual terms of the loan and, among other things, the borrower documents relied

20   on by Old IndyMac in approving the loan, the loan's loan-to-value ratio, and the

21   borrower's FICO score.  The Letter Agreements provide the precise calculation for

22   determining each loan's premium.

23   　　　　22.　　Old IndyMac delivered thousands of loans to PMI and paid tens of

24   millions of dollars in premiums for LPMI coverage for those loans.

25   　　　　23.　　The PDQ Endorsement grants PMI the right to review a particular loan's

26   file record to verify the accuracy of the information that Old IndyMac provided in the

27   loan's PDQ Transmittal Form.

28   　　　　24.　　The PDQ Endorsement provides that PMI "reserves the right to rescind

coverage with respect to *a* Loan or deny *a* Claim for *a* Loan if *the* Loan file record for *such* Loan *is* not furnished for review or audit within thirty (30) days after [PMI's] written request for the same, *to the extent that [PMI] is damaged by such delay*." PDQ Endorsement ¶ 4 (emphasis added).

25.    The PDQ Endorsement thus contemplates a 30-day delivery time *for each individual loan file.*

26.    The PDQ Endorsement also requires that PMI be actually damaged by any delay in the delivery time before PMI can even attempt to rescind LPMI coverage for a loan.

## PMI AND OLD INDYMAC'S PRACTICE AND COURSE OF DEALINGS REGARDING LOAN FILE REQUESTS

27.    In the course of PMI and Old IndyMac's dealings under the LPMI coverage program, PMI periodically asked Old IndyMac to furnish PMI with certain loan files.

28.    The particular loan files that PMI requested, in its practice and course of dealings with Old IndyMac, typically involved a loan where Old IndyMac had either (a) sent PMI a notice of delinquency about the loan or (b) filed a claim with PMI to recover insurance proceeds for the loan.

29.    If PMI did not receive all of the documents that it requested for a particular loan, PMI would reject the loan file and return it to Old IndyMac.

30.    To ensure that PMI received all documents that it requested, Old IndyMac was required to undertake, among others, the following time-consuming tasks:

      a.    gather origination files from off-site storage and other internal Old IndyMac groups;

      b.    review each file, by trained quality control staff, to ensure completeness;

      c.    reorganize the files using document level file tabs;

    d.     print any missing documentation from Old IndyMac's imaging system and/or other applications;

    e.     deliver the files to the scanning vendor to (i) image the files, (ii) index the specific set of documents required by PMI for each loan, and (iii) create compact disc ("CD") copies of these document sets to send to PMI; and

    f.     receive origination files in return and send the CDs to PMI.

Each loan file produced thus requires manual intervention, and, even though Old IndyMac generally retained (and IndyMac generally still retains) loan files electronically, a significant amount of employee time and vendor time was required to ensure compliance with PMI's requests. PMI knew about this time-consuming process.

31.    Between August 8, 2007 and May 1, 2008, PMI made 26 separate requests for loan files, requesting a total of 582 loan files. All 582 files were for loans as to which Old IndyMac either (a) sent PMI a notice of delinquency or (b) filed a claim with PMI to recover insurance proceeds. The largest request was for 140 loan files, and 19 of the requests were for 4 or fewer loan files.

32.    Because of the time-consuming process to collect and compile each loan file and ensure that no document that PMI requested was missing, Old IndyMac delivered almost all 582 loan files much later than 30 days after PMI's written requests. Not once did PMI rescind, or even threaten to rescind, coverage based on Old IndyMac's inability to deliver a loan file within 30 days after PMI's request. In fact, Old IndyMac delivered hundreds of loan files to PMI more than three months after they were requested, and PMI did not once complain.

33.    Old IndyMac and PMI developed a practice and course of dealings regarding loan file requests, specifically that (a) PMI would request a loan file only when Old IndyMac had submitted to PMI a notice of delinquency or filed a claim to recover insurance for the loan (but not every loan with a notice of delinquency was

1  subject to a loan file request by PMI), (b) each request would be for a reasonable

2  number of loan files, and (c) PMI would allow Old IndyMac a reasonable period of

3  time to deliver the loan files to PMI to account for the time-consuming process of

4  collecting and compiling the files (a reasonable period for approximately 100

5  documents often being three months or longer).

6      34.    On June 7, 2008, PMI abruptly disregarded the parties' practice and

7  course of dealings and requested approximately 511 loan files from Old IndyMac,

8  almost four times larger than any request PMI previously had made.

9      35.    Old IndyMac promptly began collecting and compiling the

10 approximately 511 loan files and delivered them to PMI.

11 **PMI'S UNREASONABLE DEMAND FOR APPROXIMATELY 5,324 LOAN**

12 **FILES TO BE DELIVERED WITHIN 30 DAYS**

13     36.    By letter dated July 8, 2008, PMI demanded that Old IndyMac deliver the

14 loan file for each loan listed on a diskette enclosed with the letter.  PMI did not

15 indicate in the letter that the enclosed diskette listed every single loan for which PMI

16 had not previously requested a loan file—approximately 5,324 loans.  This was an

17 unprecedented request.

18     37.    Old IndyMac had not sent PMI a notice of delinquency or filed a claim

19 for the overwhelming majority of the 5,324 loans.  In fact, 4,237 of the 5,324

20 requested loans were not delinquent.  Nonetheless, PMI disregarded the established

21 practice and course of the parties' dealings under the LPMI coverage program and

22 demanded delivery of every single insured loan file.

23     38.    In the July 8, 2008, letter, PMI also indicated that it had received only 2

24 of the 511 loan files that it requested on June 7, 2008 and that PMI would rescind

25 coverage for the outstanding 509 loans if the files were not delivered by July 17, 2008.

26 Old IndyMac, however, had in fact delivered all 511 loan files to PMI on July 1, 2008.

27     39.    PMI's July 8, 2008, letter was the first time PMI had ever threatened to

28 rescind coverage for a loan on the ground that Old IndyMac did not deliver the loan

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT AND DEMAND FOR JURY TRIAL

1   file within 30 days of PMI's written request.

2       40.    On July 9, 2008, after reading PMI's July 8, 2008, letter, Aaron D. Wade,

3   IndyMac's Senior Vice President, Secondary Marketing, telephoned Bill Shirreffs,

4   PMI's Senior Vice President of National Sales, and provided Mr. Shirreffs with

5   evidence that Old IndyMac had in fact delivered all 511 loan files to PMI on July 1,

6   2008.  PMI subsequently rejected loan files for approximately 223 of those 511 loans;

7   PMI requested additional information on those 223 loans, but made that request

8   directly to Old IndyMac's repurchase administration division.

9       41.    During the days following his receipt of PMI's July 8, 2008, letter,

10  Mr. Wade had several phone conversations with Mr. Shirreffs regarding the loan file

11  requests.

12      42.    Mr. Wade did not realize that the July 8, 2008, letter requested 5,324 loan

13  files because the letter did not say so.  Mr. Wade only learned of the enormous volume

14  of the request from one of his conversations with Mr. Shirreffs.

15      43.    In their final discussion, Mr. Wade explained to Mr. Shirreffs that

16  because of the unprecedented volume of PMI's request and the time-consuming

17  process required to ensure that PMI received all documents that PMI requested for

18  each loan, it would be physically impossible for IndyMac to deliver the 5,324

19  requested loan files within 30 days.  Mr. Wade further noted that the FDIC's recent

20  takeover of Old IndyMac and the FDIC's appointment as Conservator also would

21  slow down IndyMac's ability to deliver the loan files because IndyMac would have to

22  secure the FDIC's approval before delivering the files.  Mr. Wade explained that

23  IndyMac would need at least 60 additional days, and possibly longer, to comply with

24  PMI's request.

25      44.    Mr. Shirreffs indicated that a 60-day or longer extension was reasonable

26  and that PMI likely would grant it, particularly because IndyMac had taken PMI's

27  request seriously and had contacted PMI about the 511 requested loan files.

28  Mr. Shirreffs promised that he would get back to Mr. Wade quickly about the oral

11

1   request for an extension.  Mr. Wade never heard back from Mr. Shirreffs.

2       45.   By letter dated August 13, 2008, PMI acknowledged IndyMac's request

3   for an extension on delivering the 5,324 loan files.  PMI wrote that the PDQ

4   Endorsement required delivery within 30 days of a written request and that PMI did

5   not understand why IndyMac was unable to meet that deadline.  Disregarding the

6   reasons that Mr. Wade had given to Mr. Shirreffs about the basis for IndyMac's

7   reasonable request for an extension, PMI asked IndyMac to explain why it needed an

8   extension.

9       46.   On August 27, 2008, Martha M. Belcher, IndyMac's Senior Vice

10   President and Secondary Marketing General Counsel, sent an email to William M.

11   Levinthal, PMI's Vice President and Assistant General Counsel, explaining that

12   IndyMac was in the process of responding to PMI's August 13, 2008, letter and that if

13   Mr. Levinthal had any questions he should contact Ms. Belcher.

14       47.   Instead of responding to Ms. Belcher's email, the following day,

15   August 28, 2008, Mr. Levinthal sent a letter to IndyMac stating that PMI was

16   rescinding LPMI coverage for 5,565 loans—the 5,324 loans that PMI unreasonably

17   demanded in its July 8, 2008, letter and 241 additional loans that PMI claimed it had

18   requested files for but not received within 30 days.  Approximately 680 of the 5,565

19   loans were loans for which Old IndyMac sent PMI files but that PMI rejected and thus

20   claims are "still outstanding."  PMI claimed that it had the right to rescind LPMI

21   coverage for the 5,565 loans under the PDQ Endorsement on the grounds that

22   IndyMac had not delivered the loan files for those 5,565 loans within 30 days of

23   PMI's written requests and PMI had allegedly been damaged by the delay.

24       48.   Mr. Levinthal explained that the delay allegedly caused PMI damage

25   because the insured loan pool was exhibiting an exorbitant delinquency rate, IndyMac

26   had been placed in conservatorship, and PMI allegedly could not protect its rights

27   without performing an adequate investigation of all of the insured loans.  However, it

28   is unclear if or how PMI sustained any actual damage as a result of any delay.

49.    In fact, PMI disregarded (a) the language of the PDQ Endorsement, which contemplated a 30-day delivery time *per individual loan file*, not for a massive request of more than 5,000 loan files; (b) IndyMac's reasonable explanation for the delay; (c) that the delay was in fact caused by PMI's unprecedented burdensome request, not by IndyMac; and (d) IndyMac and PMI's practice and course of dealings over 26 prior requests and deliveries under the LPMI coverage program.

50.    The following day, August 29, 2008, PMI sent IndyMac a letter enclosing a check returning $13,713,883.72 in premiums that IndyMac paid to insure the 5,565 loans for which PMI claims it has rescinded insurance coverage.

51.    IndyMac did not deposit the check.  Instead, on September 12, 2008, IndyMac returned the check to PMI because IndyMac disputes PMI's attempt to rescind coverage.  IndyMac also filed the original complaint in this case on September 12, 2008.

52.    Even though IndyMac was not required, under the parties' established practice and course of dealings, to deliver loan files for loans that are not delinquent or for which IndyMac has not made a claim, IndyMac nonetheless delivered the 5,565 loan files as quickly as possible to PMI as an act of good faith, delivering the final set of those loan files on September 29, 2008.  IndyMac thus delivered all 5,565 loan files within 83 days after PMI's written request, conforming to the delivery times established by the parties' practice and course of dealings for a request significantly smaller than PMI's unprecedented and unreasonable request.  IndyMac incurred substantial expense in collecting, compiling, and delivering these loan files so quickly.

**PMI'S UNREASONABLE PURPORTED RESCISSION OF LPMI COVERAGE ON 1,579 LOANS ON THE ERRONEOUS BASIS THAT THE LOANS WERE INELIGIBLE FOR LPMI COVERAGE**

53.    After IndyMac filed the original complaint in this case, PMI sent IndyMac a letter dated October 3, 2008 in which PMI informed IndyMac that it was rescinding LPMI coverage on approximately 292 additional loans on the ground that

13

1    those loans were ineligible for LPMI coverage, a new theory for its purported

2    rescission.

3         54.    PMI also asserted in the October 3, 2008, letter that this new rescission

4    theory applied to 1,287 of the 5,565 loans for which PMI previously purported to

5    rescind LPMI coverage on August 28, 2008.

6         55.    The 292 loans and 1,287 loans (totaling 1,579 loans) all were interest-

7    only, stated income loans with loan-to-value ratios greater than 95%.

8         56.    An interest-only loan is a loan where the borrower pays only interest and

9    does not pay principal for a period of the loan term.  For example, a loan that the

10   borrower pays only interest on for the first 10 years and a combination of interest and

11   principal for the remaining 20 years of the loan term is an interest-only loan because

12   for a part of the total loan term, the borrower pays only interest.

13        57.    A stated income loan is a loan where the borrower states his or her

14   income in writing on a form accompanying the mortgage loan application or on some

15   other documentation, but does not provide any records proving the accuracy of that

16   income.

17        58.    According to PMI's October 3, 2008, letter, Old IndyMac had submitted

18   the 1,579 loans to PMI for LPMI coverage beginning on or about May 4, 2007

19   through on or about August 7, 2007.

20        59.    In the October 3, 2008, letter, PMI claimed that interest-only, stated

21   income loans with loan-to-value ratios greater than 95% purportedly did not comply

22   with PMI's Approved Underwriting Guidelines and thus purportedly were ineligible

23   for LPMI coverage.  PMI further asserted in that letter that the Policy and the Letter

24   Agreements permit PMI to rescind coverage on loans that were not originated in

25   compliance with PMI's Approved Underwriting Guidelines.

26        60.    Upon information and belief, interest-only, stated income loans with

27   loan-to-value ratios greater than 95% did comply with PMI's Approved Underwriting

28   Guidelines that were in force during the period that Old IndyMac submitted the 1,579

14

1  loans to PMI for LPMI coverage, and the 1,579 loans thus were eligible for LPMI

2  coverage.

3       61.    When Old IndyMac submitted the 1,579 loans to PMI for LPMI

4  coverage, Old IndyMac informed PMI in the PDQ Transmittal Forms that these loans

5  were interest-only, stated income loans with loan-to-value ratios greater than 95%.

6       62.    Upon information and belief, PMI reviewed the PDQ Transmittal Forms

7  that contained these 1,579 loans and thus knew or should have known that these 1,579

8  loans were interest-only, stated income loans with loan-to-value ratios greater than

9  95%.

10       63.    Upon information and belief, PMI has from time to time rejected as

11  ineligible certain loans that Old IndyMac submitted for LPMI coverage after PMI

12  reviewed the loan information that Old IndyMac provided in the PDQ Transmittal

13  Forms.

14       64.    PMI did not reject any of these 1,579 loans when, or shortly after,

15  Old IndyMac submitted them to PMI for LPMI coverage.  Instead, PMI affirmatively

16  agreed to provide LPMI coverage on these 1,579 insured loans, calculated and

17  charged Old IndyMac and/or IndyMac premium on them, and accepted the premium

18  that Old IndyMac and/or IndyMac paid.  In fact, PMI continued to charge and accept

19  premium on these 1,579 loans each month for more than a year.  PMI insured these

20  loans for more than a year without once informing Old IndyMac and/or IndyMac that

21  it believed they were ineligible for LPMI coverage.

22       65.    Old IndyMac also submitted claims for insurance coverage on some of

23  these loans.  Upon information and belief, PMI reviewed the loan files of the loans for

24  which Old IndyMac submitted claims.  PMI paid out claims on some of these 1,579

25  loans.

26       66.    Upon information and belief, LPMI coverage was available

27  from mortgage insurers other than PMI for these interest-only, stated income loans

28  with loan-to-value ratios greater than 95% during the period that Old IndyMac

1  submitted the 1,579 loans to PMI for LPMI coverage.  Had PMI rejected the loans as

2  ineligible when, or shortly after, Old IndyMac submitted them to PMI for LPMI

3  coverage, Old IndyMac would have purchased the insurance elsewhere.  Upon

4  information and belief, such replacement insurance is no longer available in the

5  marketplace.

6      67.   By letter dated October 13, 2008, PMI sent IndyMac checks returning

7  more than $575,000 in premiums that IndyMac paid to insure the approximately 292

8  additional loans for which PMI claimed it rescinded insurance coverage in the October

9  3, 2008, letter.

10     68.   IndyMac has not deposited the checks.  Instead, IndyMac is returning the

11 checks to PMI because IndyMac disputes PMI's attempt to rescind coverage.

12     69.   To date, PMI has purported to rescind LPMI coverage on approximately

13 5,857 insured loans.  PMI's attempt to rescind coverage on these 5,857 loans, totaling

14 more than $1.57 billion in value, is unprecedented, unenforceable, and a tortious

15 breach of the implied duty of good faith and fair dealing.  PMI's conduct should be

16 deemed null and void.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

19     70.   IndyMac realleges and incorporates by reference herein each allegation

20 contained in paragraphs 1 through 69 above.

21     71.   PMI has contended that it is permitted to rescind LPMI coverage on

22 5,857 insured loans that have a total loan value of more than $1.57 billion.  PMI has

23 contended that it is permitted to rescind LPMI coverage on 5,565 loans on the ground

24 that IndyMac did not deliver loan files to PMI for those 5,565 loans within 30 days of

25 PMI's requests, and that PMI somehow has actually been damaged by IndyMac's

26 delay.  PMI also has contended that it is permitted to rescind LPMI coverage on an

27 additional 292 loans on the ground that those 292 loans purportedly are ineligible for

28 LPMI coverage as they are interest-only, stated income loans with loan-to-value ratios

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT AND DEMAND FOR JURY TRIAL

greater than 95%—and that 1,287 of the 5,565 loans for which PMI purportedly

rescinded coverage under the first rescission theory also fall under this second

rescission theory.  IndyMac disputes PMI's contentions.

72.    IndyMac contends that

     a.    the parties contemplated—as evidenced by the language in the

         PDQ Endorsement—a 30-day delivery time when a request was

         made for *an individual loan file*, not for a massive request of more

         than 5,000 loan files;

     b.    PMI has not, in any way, been actually damaged by the purported

         delay, as required by the PDQ Endorsement before PMI can even

         attempt to rescind LPMI coverage for a single loan, let alone 5,565

         loans;

     c.    given the unprecedented nature of PMI's request and the inherent

         overbreadth and burden of the request, IndyMac has not delayed,

         or any delay is excused;

     d.    IndyMac provided PMI with a reasonable explanation for any

         delay in delivering the loan files, but PMI unreasonably

         disregarded that explanation;

     e.    PMI, not IndyMac, is responsible for the delay.  The volume of

         PMI's request was unprecedented, PMI required a specific set of

         documents for each loan file, and PMI knew that collecting,

         compiling, and organizing all those documents in the proper format

         was so time-consuming that it would be impossible for IndyMac to

         comply with the request within 30 days;

     f.    IndyMac and PMI's practice and course of dealings under the

         LPMI coverage program, as evidenced by 26 prior requests and

         deliveries, demonstrate that the parties did not contemplate a strict

         30-day delivery time for loan file requests, particularly not for such

1    an unprecedented, massive request;

2    g.    even if the PDQ Endorsement specifies a 30-day delivery deadline

3          regardless of the size of the request, the parties modified any such

4          requirement by their practice and course of dealings, and PMI has

5          waived any right it may have had to rescind coverage on the

6          ground of delay because on multiple prior occasions, PMI accepted

7          loan files much later than 30 days after the requests;

8    h.    the 1,579 loans that PMI claims were ineligible for LPMI coverage

9          were in fact eligible for LPMI coverage when Old IndyMac

10         submitted them to PMI for coverage;

11   i.    PMI knew or reasonably should have known at the time that it

12         agreed to provide LPMI coverage for these 1,579 loans that these

13         loans were interest-only, stated income loans with loan-to-value

14         ratios greater than 95%;

15   j.    PMI has waived any right to argue, and/or is estopped from

16         arguing, that the 1,579 loans are ineligible because PMI has treated

17         these loans as eligible for more than one year by affirmatively

18         agreeing to provide LPMI coverage on these loans, calculating and

19         charging Old IndyMac and/or IndyMac premium on them,

20         accepting the premium, continuing to charge and accept premium

21         each month for more than a year, and later paying out claims for

22         coverage on some of these loans;

23   k.    during the period that Old IndyMac submitted the 1,579 loans to

24         PMI for coverage, LPMI coverage was available from other

25         mortgage insurers for interest-only, stated income loans with loan-

26         to-value ratios greater than 95%, but such replacement insurance is

27         no longer available in the marketplace; and

28   l.    PMI's failure to reject these 1,579 loans when, or shortly after,

18

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT AND DEMAND FOR JURY TRIAL

1    Old IndyMac submitted them to PMI for LPMI coverage has

2    injured IndyMac because IndyMac cannot now insure the 1,579

3    loans as it would have been able to do and would have done had

4    PMI rejected the loans as ineligible at the time Old IndyMac

5    submitted them for coverage.

6    IndyMac is informed and believes, and based thereon alleges, that PMI disputes its

7    contentions.

8    73.    An actual and justiciable controversy exists between IndyMac and PMI

9    concerning the matters alleged herein.

10    74.    IndyMac seeks a judicial declaration confirming that PMI's contentions

11    as stated above are wrong and that IndyMac's contentions as stated above are correct;

12    that PMI must honor all duties under the LPMI coverage program, including its duty

13    to provide LPMI coverage for the 5,857 loans for which PMI contends it has

14    rescinded LPMI coverage; that PMI's attempted rescission of LPMI coverage on these

15    5,857 insured loans has no legal effect and is unconscionable, unenforceable, and null

16    and void; and that because of PMI's conduct, IndyMac is excused from performing or

17    complying with any conditions and duties otherwise imposed on it by the LPMI

18    coverage program.

## SECOND CAUSE OF ACTION

### (Injunctive Relief)

21    75.    IndyMac realleges and incorporates by reference herein each allegation

22    contained in paragraphs 1 through 69 and 70 through 74 above.

23    76.    PMI's alleged rescission of LPMI coverage on 5,857 insured loans

24    totaling more than $1.57 billion in value has already inflicted significant irreparable

25    injury on IndyMac by shifting more than $1.57 billion of risk exposure to IndyMac.

26    IndyMac also cannot protect all of the $1.57 billion risk because mortgage insurance

27    for some or all of those loans is no longer available in the marketplace.

28    77.    PMI's alleged rescission of 5,857 loans also will put IndyMac at

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT AND DEMAND FOR JURY TRIAL

significant risk of further irreparable injury because IndyMac may be required, under applicable securitization documents and loan sale agreements, to maintain mortgage insurance for each loan.  Believing that IndyMac no longer maintains such insurance because of PMI's alleged rescission, the investors likely will demand that IndyMac repurchase the 5,857 loans.  The likelihood of such a demand places IndyMac at immediate additional risk of extreme and irreparable injury.

78.    PMI will suffer no injury if it is enjoined from rescinding coverage for the 5,857 loans and from demanding loan files for loans that are not delinquent or for which IndyMac has not made a claim, and compelled to allow IndyMac a reasonable period of time to deliver the loan files that PMI is permitted to review.  The risk of the irreparable injury to IndyMac far outweighs any harm PMI might possibly suffer from an injunction.

79.    To correct the injury that PMI already has caused IndyMac and to prevent probable irreparable injury that IndyMac likely will suffer in the very near future, PMI should be (a) compelled to correct the injury it has inflicted by withdrawing its alleged rescission, (b) prevented from demanding loan files for loans that are not delinquent or for which IndyMac has not made a claim, and (c) compelled to allow IndyMac a reasonable period of time to deliver the loan files that PMI is permitted to review—only files for loans that are delinquent or for which IndyMac has made a claim under the LPMI coverage program.  An injunction will return the parties to the last peaceable uncontested status that existed before PMI's unprecedented and unconscionable conduct in allegedly rescinding coverage for the 5,857 loans.

80.    IndyMac has no adequate remedy at law.

### THIRD CAUSE OF ACTION

### (Breach of Contract)

81.    IndyMac realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 69, 70 through 74, and 75 through 80 above.

82.    Implied in the Policy was a covenant that PMI would act in good faith

and deal fairly with IndyMac, that PMI would do nothing to interfere with the rights of the Insureds to receive the benefits of the Policy, and that PMI would give at least the same level of consideration to the Insureds' interests as it gives to its own interests.  PMI breached these duties by, among other things,

     a.    wrongfully and unreasonably asserting grounds for rescission that it knows are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom, practice, and standards, its practice and course of dealings with IndyMac, and the facts;

     b.    wrongfully and unreasonably demanding loan files for loans for which IndyMac has not sent PMI a notice of delinquency or filed a claim, on grounds that it knows are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom, practice, and standards, its practice and course of dealings with IndyMac, and the facts;

     c.    giving greater consideration to its own interests than it gave to the interests of the Insureds;

     d.    failing to properly investigate before purporting to rescind coverage, and failing to communicate and follow accepted insurance industry custom, practice, and standards in responding to IndyMac's requests for coverage and in purporting to rescind coverage; and

     e.    otherwise acting as alleged above.

83.    To the extent not waived or otherwise excused, IndyMac has complied with all terms and conditions precedent contained in the Policy.

84.    As a direct and proximate result of PMI's acts, IndyMac has been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)

85.    IndyMac realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 69, 70 through 74, 75 through 80, and 81 through 84 above.

86.    Implied in the Policy was a covenant that PMI would act in good faith and deal fairly with IndyMac, that PMI would do nothing to interfere with the rights of the Insureds to receive the benefits of the Policy, and that PMI would give at least the same level of consideration to the Insureds' interests as it gives to its own interests.  Instead of complying with these duties, PMI acted in bad faith by, among other things,

   a.    wrongfully and unreasonably asserting grounds for rescission that it knows are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom, practice, and standards, its practice and course of dealings with IndyMac, and the facts;

   b.    wrongfully and unreasonably demanding loan files for loans for which IndyMac has not sent PMI a notice of delinquency or filed a claim, on grounds that it knows are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom, practice, and standards, its practice and course of dealings with IndyMac, and the facts;

   c.    giving greater consideration to its own interests than it gave to the interests of the Insureds;

   d.    failing to properly investigate before purporting to rescind coverage, and failing to communicate and follow accepted insurance industry custom, practice, and standards in responding to IndyMac's requests for coverage and in purporting to rescind

22

1  coverage; and

2      e.    otherwise acting as alleged above.

3      87.    In breach of the implied covenant of good faith and fair dealing, PMI did

4  the things and committed the acts alleged above for the purpose of consciously

5  withholding from IndyMac the rights and benefits to which it was entitled under the

6  LPMI coverage program, and without considering the interests of IndyMac and its

7  employees at least to the same extent as it did its own interests.

8      88.    PMI's acts are inconsistent with IndyMac's reasonable expectations, are

9  contrary to established practices and legal requirements, are contrary to the express

10  terms of the LPMI coverage program, and constitute bad faith.

11      89.    Pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813, 210 Cal. Rptr. 211

12  (1985), IndyMac is entitled to recover all attorneys' fees and costs that it reasonably

13  has incurred, and continues to incur, in its efforts to protect the benefits of insurance

14  that have been, and continue to be, wrongfully and in bad faith withheld by PMI.

15      90.    PMI's conduct is despicable within the meaning of California Civil Code

16  section 3294, and has been done with a conscious disregard of IndyMac's rights,

17  constituting malice, in that PMI engaged in a series of acts designed to deny the

18  benefits due under the LPMI coverage program and to conceal and/or misrepresent

19  material facts.

20      91.    In light of information, facts, and relevant law to the contrary, PMI, by

21  acting as alleged above, consciously disregarded IndyMac's rights and forced

22  IndyMac to incur substantial financial risk, without any assistance from PMI, thereby

23  inflicting substantial financial damage on IndyMac.  PMI ignored IndyMac's interests

24  and concerns, with the requisite intent to injure within the meaning of California Civil

25  Code section 3294.  Therefore, under California Civil Code section 3294, IndyMac is

26  entitled to recover punitive damages from PMI in an amount to be determined at trial

27  for the sake of example and to deter similar conduct in the future.

28

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT AND DEMAND FOR JURY TRIAL

# FIFTH CAUSE OF ACTION

## (Reformation of Written Instrument Based on Mistake)

92.     IndyMac realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 69, 70 through 74, 75 through 80, 81 through 84, and 85 through 91 above.

93.     If, and to the extent that, the Policy, the PDQ Endorsement, and/or the Letter Agreements permit PMI to rescind LPMI coverage on the 5,857 loans under the above alleged circumstances, then the Policy, the PDQ Endorsement, and/or the Letter Agreements do not reflect the true intent of the parties.  This result is from the mutual mistake of the parties.  The parties' true agreement is that (a) PMI could rescind coverage for a particular loan if and only if (i) IndyMac unreasonably refused to deliver a loan file within a reasonable period of time after a written request from PMI for the file, and (ii) IndyMac's refusal caused actual and substantial damage to PMI, and (b) interest-only, stated income loans with loan-to-value ratios greater than 95% were eligible for LPMI coverage when Old IndyMac submitted them to PMI.

94.     Without knowledge of the true facts and in reliance on PMI's representations, IndyMac was deceived and misled into accepting the Policy, the PDQ Endorsement, and/or the Letter Agreements to the extent that they differ materially from the prior oral and written understandings of the parties.  IndyMac's reliance on PMI's representations that the Policy, the PDQ Endorsement, and/or the Letter Agreements conformed to the parties' intended agreement was reasonable and justified.  Therefore, if, and to the extent that, PMI's present contention—that the Policy, the PDQ Endorsement, and/or the Letter Agreements, as written, permit PMI to rescind coverage for the 5,857 loans under the above alleged circumstances—is correct, then this result is based on mutual mistake.  Therefore, the Policy, the PDQ Endorsement, and/or the Letter Agreements should be reformed, to the extent necessary, to prohibit PMI from rescinding coverage (a) on any loan unless (i) IndyMac unreasonably refuses to deliver a loan file within a reasonable period of

1   time after a written request from PMI for the file and (ii) IndyMac's refusal causes

2   actual and substantial damage to PMI, or (b) on any interest-only, stated income loan

3   with a loan-to-value ratio greater than 95% that Old IndyMac submitted to PMI for

4   LPMI coverage between on or about May 4, 2007 and on or about August 7, 2007,

5   and, to the extent necessary, to delete any language in the Policy, the PDQ

6   Endorsement, and/or the Letter Agreements that PMI contends permits PMI to rescind

7   coverage on the 5,857 loans under the above alleged circumstances.

8

9       WHEREFORE, IndyMac prays for judgment as follows:

10      **ON THE FIRST CAUSE OF ACTION**

11      1.      For declarations in accord with IndyMac's contentions stated above;

12      **ON THE SECOND CAUSE OF ACTION**

13      2.      For an injunction (a) requiring PMI to withdraw its alleged rescission of

14   LPMI coverage for the 5,857 loans, (b) preventing PMI from demanding loan files for

15   loans that are not delinquent or for which IndyMac has not made a claim, and

16   (c) requiring PMI to allow IndyMac a reasonable period of time to furnish PMI with

17   the loan files that PMI is permitted to review—only files for loans that are delinquent

18   or for which IndyMac has made a claim;

19      **ON THE THIRD CAUSE OF ACTION**

20      3.      For damages according to proof at the time of trial, plus interest;

21      **ON THE FOURTH CAUSE OF ACTION**

22      4.      For damages according to proof at the time of trial, plus interest;

23      5.      For reasonable attorneys' fees and costs incurred in obtaining the benefits

24   due under the LPMI coverage program, according to proof at the time of trial, plus

25   interest;

26      6.      For punitive damages in an amount to be determined at the time of trial;

27      **ON THE FIFTH CAUSE OF ACTION**

28      7.      For the reformation of the Policy, the PDQ Endorsement, and/or the

1    Letter Agreements to the extent necessary to reflect the true intent of the parties as

2    described above;

3                          **ON ALL CAUSES OF ACTION**

4        8.      For IndyMac's costs of suit incurred herein; and

5        9.      For such other, further, and/or different relief as the Court may deem just

6    and proper.

7

8    DATED: October 3), 2008            DICKSTEIN SHAPIRO LLP

9

10                                      By: _____

11                                          Kirk A. Pasich
                                            Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT AND DEMAND FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

 IndyMac hereby demands a trial by jury in this action.


DATED: October 31, 2008   DICKSTEIN SHAPIRO LLP


By: _____
   Kirk A. Pasich
  Attorneys for Plaintiff

27