IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INDYMAC FEDERAL BANK, F.S.B., by the FEDERAL DEPOSIT INSURANCE CORPORATION as Conservator,

    Plaintiff,

  v.

PMI MORTGAGE INSURANCE CO., an Arizona corporation,

    Defendant.
    /

AND RELATED COUNTERCLAIMS.
    /

No. C 08-04303 WHA

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**

**INTRODUCTION**

In this breach of contract action, defendant PMI Mortgage Insurance Co. moves to dismiss plaintiff IndyMac Federal Bank's third and fourth causes of action relating to breach of the implied covenant of good faith and fair dealing under FRCP 12(b)(6). IndyMac also moves for partial summary judgment to address PMI's alleged duty to provide insurance coverage until the Court reaches a decision on the merits. For the reasons stated below, both motions are **DENIED**.

**STATEMENT**

IndyMac was involved in the residential mortgage loan business and acquired mortgage insurance from PMI. This insurance — referred to as the Lender Paid Mortgage Insurance —

1  protected IndyMac from the risk of loan default and was governed by an insurance policy, an
2  amendment to the insurance policy called the Partner Delivered Quality Endorsement, and an
3  agreement between PMI and IndyMac.  The PDQ Endorsement was the mechanism through
4  which coverage by PMI was given for loans IndyMac sought to insure (Second Amd. Compl.
5  ¶ 21).  In the PDQ Endorsement, the following language appeared:

> The Company reserves the right to rescind coverage with respect to a Loan or deny a claim for a Loan if the Loan file record for such Loan is not furnished for review or audit within thirty (30) days after the Company's written request for the same, to the extent that the Company is damaged by such delay.  Failure to deliver such Loan file record shall be presumed to prejudice the Company.

On a single day, as the mortgage crisis unfolded, PMI made a written demand on IndyMac that it provide files for 5,565 loans, which IndyMac failed to provide within thirty days of the demand (Second Amd. Compl. ¶ 2).  IndyMac claims that this demand was completely unprecedented, was inherently unreasonable, and was against the parties' well-established practice and course of dealings (*ibid.*).  After IndyMac failed to comply with the demand, PMI attempted to rescind coverage on the loans under the above provision of the contract.  IndyMac alleges that this was both an express breach of the contract and breach of the implied covenant of good faith and fair dealing.

For purposes of IndyMac's motion for partial summary adjudication, the parties agree on the following facts.  Because of IndyMac's failure to deliver the loan files within thirty days, PMI attempted to rescind coverage on the loans.  PMI sent a letter providing IndyMac with notice that PMI was rescinding insurance coverage.  PMI also sent IndyMac checks to return the premiums that IndyMac had paid to insure the loans.  IndyMac did not deposit the checks.  Disputing PMI's rescission, IndyMac returned the checks to PMI.  Albeit late, IndyMac ultimately delivered the requested loan files to PMI.

**ANALYSIS**

**1. MOTION TO DISMISS.**

In its motion to dismiss, PMI makes two arguments as to why its motion should succeed.  *First*, PMI argues that — as a matter of law — it cannot be liable for breach of the implied

2

covenant for exercising an express contractual right. *Second*, PMI argues that even if its actions were not covered by the express provisions of the contract, its reliance on interpretation of the express language was objectively reasonable and thus prevents a claim for breach of the implied covenant.

The parties agree that every contract imposes a duty of good faith and fair dealing in the performance of the contract on each of the parties such that neither party shall take any action that effectively destroys or injures the right of the other party to receive the benefits of the contract. PMI argues that the California Supreme Court has held that this implied covenant is subject to the limitation that it cannot preclude what the express terms of the contract permit. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 374 (1992). In *Carma*, the California Supreme Court held that defendant lessor's exercise of a lease provision — which granted the lessor the absolute right to terminate the lease on the lessee's request to sublet a portion of the premises — was not a breach of the covenant of good faith and fair dealing because this act was expressly authorized by the lease provision *and* was within the reasonable expectations of the parties. *Id.* at 371. While it is true that the court held that "as a general matter, implied terms should never be read to vary express terms," *id*. at 374, the court found it crucial that the conduct covered by the express provision of the contract was within the parties' legitimate expectations. In *Carma*, the court found that the only incentive for terminating the lease would be in the hopes of receiving a higher rent from a new lessee. Since that was the only purpose of having the express provision, it could not be said that exercising it for this purpose was contrary to any reasonable expectation of the plaintiff and was a violation of the implied covenant.

Here, that is not the case. Even assuming that PMI's actions were expressly permitted by the contract — a holding this order does not reach — IndyMac sufficiently alleges no one could have reasonably expected the bank to turn over 5,565 files within the thirty-day period (Second Amd. Compl. ¶ 33). While PMI had the discretionary power to demand loan files from IndyMac, it is exactly this type of discretionary exercise of power where the implied covenant finds its most particular application. *Carma*, 2 Cal. 4th 342 at 372. PMI was required to

3

exercise this discretionary power in a fair and good faith manner, and IndyMac sufficiently alleges that PMI did not. It is not enough to point to a provision in the contract permitting the allegedly nefarious conduct for if this was enough to avoid a breach of the implied covenant, the implied covenant would cease to have its own meaning as it would always require a breach of the underlying contract itself. The implied covenant is not concerned with the technical permissiveness of conduct pursuant to a contract, it is concerned with assuring that all conduct related to receiving the benefits of the contract is done in good faith. IndyMac sufficiently alleges that PMI's conduct was done in bad faith and thus IndyMac's claims for breach of the implied covenant are sufficient.

PMI alternatively argues that when there is a "genuine dispute" as to the insurer's liability to pay based on the proper interpretation of a policy, and the insurer based its actions on an interpretation of the policy that is objectively reasonable, the insurer's subjective intent is irrelevant and there can be no breach of the implied covenant as a matter of law. *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 973 (2003). In *Morris*, the facts were undisputed that plaintiff's illness was not covered in his policy. Rather, the issue of the defendant's liability regarding bad faith depended solely on whether it acted in bad faith when it *interpreted* an incontestability clause in the plaintiff's policy and, thus, the sole question was a question of law and contract interpretation. Because the bad faith was entirely related to the question of defendant's motives in its contract interpretation, the court found that there was only a "genuine dispute" as to the meaning of the contract, invoked the objectively reasonable standard, and upheld the dismissal of the claim.

Here, the question does not turn on solely a legal question. The question is whether the parties would reasonably have expected that IndyMac would find and turn over 5,565 files in a single month period. The language itself does not go so far, at least expressly. Perhaps the language can be stretched to cover such an extravagant demand, but that will turn on the commercial setting and the surrounding facts and circumstances, all highly fact intensive and incapable of resolution on the pleadings.

4

Thus, while it is true that *one* of the issues to be resolved is the legal issue of what the contract permitted, it is not the *sole* issue. The California Supreme Court has stated that "[i]n the insurance bad faith context, a dispute is not 'legitimate' unless it is founded on a basis that is reasonable under all the circumstances." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 724 n.7 (2007). When the issues are mixed with factual and legal questions, it is no longer proper to say that the subjective intent is not relevant. Indeed, it would be impossible to find that the implied covenant can be violated by expressly permitted conduct done in bad faith, yet conduct taken in reliance of a mere objectively reasonable interpretation of the contract is immunized from violating the implied covenant. As there are still factual issues to be resolved in conjunction with the legal question of contract interpretation, dismissal is improper. Taken in the light most favorable to IndyMac, the complaint sufficiently alleges a cause of action for breach of the implied covenant of good faith and fair dealing.

### 2. MOTION FOR PARTIAL SUMMARY ADJUDICATION.

In its motion for partial summary adjudication, IndyMac requests that this Court define PMI's duty to provide coverage in light of PMI's rescission. PMI's position is that unilateral rescission was proper after it provided plaintiff with notice of the rescission and returned the premium and, thus, it had no duty to continue to provide coverage. According to IndyMac, its refusal to accept the premiums back and return of the premiums to PMI made the rescission ineffectual. Plus, IndyMac argues that PMI cannot unilaterally rescind coverage without court approval and that PMI is required to continue providing IndyMac with coverage until the Court rules on the validity of PMI's unilateral action. PMI counters that IndyMac's motion is procedurally improper because it requests adjudication of matters outside of the claim or defenses of the parties. PMI further argues that IndyMac essentially requests a mandatory preliminary injunction because IndyMac seeks an order requiring defendant to continue providing coverage until the merits are resolved.

IndyMac asserts its "motion has nothing to do with the merits of PMI's actions. Rather, [its] motion seeks summary adjudication of a discrete, purely legal issue — PMI's duty to continue providing coverage unless and until this Court affirms PMI's purported rescissions of

5

coverage on the 5,857 loans" (Br. at 1). This order disagrees. This issue is tied up in the merits of the parties' actions, and consideration of the merits is premature due to the need to allow the parties sufficient opportunity to engage in discovery. There are too many open factual questions. IndyMac's motion for partial summary adjudication is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's claims of breach of the implied covenant of good faith and fair dealing is **DENIED**, and plaintiff's motion for partial summary adjudication is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 11, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE